UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| GARY DEAN S.,<br><br>Petitioner,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Respondent, | Case No.: 4:20-cv-00397-BLW-REP<br><br>**REPORT AND RECOMMENDATION** |

Pending is Petitioner Gary Dean S.'s Petition for Review (Dkt. 1), appealing the Social Security Administration's denial of his application for Title II benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Report and Recommendation.

## I. ADMINISTRATIVE PROCEEDINGS

On or around September 12, 2016, Petitioner protectively filed an application for Title II benefits for a period of disability beginning March 17, 2014. This application was initially denied on February 1, 2017 and, again, on reconsideration on July 27, 2017. On September 25, 2017, Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On May 22, 2019, ALJ Stephen Marchioro held a video hearing, at which Petitioner, represented by attorney Jared S. Fluckiger, appeared and testified. Sara Statz, an impartial vocational expert, also appeared and testified at the same hearing.

On July 26, 2019, the ALJ issued a decision denying Petitioner's claim, finding that he was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council. On June 9, 2020, the Appeals Council denied Petitioner's

**REPORT AND RECOMMENDATION - 1**

Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner filed this case (now, with attorney Brendon C. Taylor). He raises three points of error: (i) the ALJ erred in not finding that Petitioner's impairments meet or medically equal a listed impairment; (ii) the ALJ erred in discrediting Petitioner's testimony; and (iii) the ALJ erred in finding that Petitioner can perform his past relevant work or, alternatively, other jobs that exist in significant numbers in the national economy. Pet.'s Brief at 12-19 (Dkt. 18). Petitioner requests that the Court either reverse the ALJ's decision and find that he is entitled to benefits, or remand the case for further proceedings and award attorneys' fees. *Id*. at 20.

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the

conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error.  *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098.  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay

**REPORT AND RECOMMENDATION - 3**

or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied regardless of their medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant has not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in SGA since March 17, 2014 (the alleged onset date). AR 28.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe medically determinable impairment: degenerative disc disease. AR 28-29.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded that Petitioner's above-listed medically determinable impairment, while severe, does

**REPORT AND RECOMMENDATION - 4**

not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. AR 29.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established, if the work lasted long enough for the claimant to learn to do the job and be engaged in SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except can only occasionally climb ramps or stairs; can never climb ladders, ropes, or scaffolds; can frequently balance; can occasionally stoop, kneel, crouch, and crawl; can occasionally be exposed to extreme cold and only occasionally exposed to vibration.

AR 29.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of their impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, they are not disabled; if the claimant cannot do other work and meets the duration requirement, they are disabled. Here, the ALJ found that Petitioner is capable of performing his past relevant work (consultant, industrial organization manager, and production superintendent). AR 33-34. The ALJ also found that Petitioner is

**REPORT AND RECOMMENDATION - 5**

capable of working full-time as a production planner, general supervisor, and preventative maintenance coordinator. AR 34-35. Based on these findings, the ALJ concluded that Petitioner is not disabled. AR 35.

**B.     Analysis**

   1.   <u>The ALJ Properly Evaluated Petitioner's Impairments at Step Three of the Sequential Process</u>

At step three, the ALJ considers whether one or more of a claimant's impairments meet or medically equal an impairment listed in Appendix I to Subpart P of the regulations. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). In essence, "[t]he listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Zebley*, 493 U.S. at 532 (emphasis in original; citations omitted).

The claimant bears the burden of proof at step three. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A mere diagnosis is insufficient to meet this burden. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). "'[An impairment] must also have the *findings* shown in the listing of that impairment.'" *Id*. (quoting 20 C.F.R. § 404.1525(d); emphasis added in *Key*). Thus, to meet a listing, an impairment "must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). Likewise, to equal a listed impairment, a claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id*. at 531 (emphasis in original).

Here, Petitioner argues that the ALJ erred in finding that his impairments (both severe and non-severe) do not meet or medically equal Listing 1.04 (Disorders of the Spine). Pet.'s

**REPORT AND RECOMMENDATION - 6**

Brief at 12-14 (Dkt. 18).[1]  Listing 1.04 requires a finding of disability for a claimant who: (i) has a disorder of the spine, such as degenerative disc disease; (ii) that results in "compromise of a nerve root . . . or the spinal cord," and (iii) which is accompanied by the additional requirements set forth under subsections 1.04(A), 1.04(B), or 1.04(C).  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.  Petitioner argues that only 1.04(A) is the appropriate listing in this case, which requires:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the low back, positive straight-leg raising test (sitting and supine).

Pet.'s Brief at 13 (Dkt. 18) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A)).

Against these requirements, however, the ALJ determined that Petitioner's "degenerative disc disease has not resulted in significant nerve root compression, motor loss or weakness, an inability to ambulate effectively, or an inability to perform fine or gross movements effectively as described in the listing."  AR 29.  Petitioner disagrees, highlighting instances in the medical record that indicate "narrowing" nerve roots, an inability to ambulate effectively, limitations on movement of his spine, and a deficiency of fine motor movement in his hands.  Pet.'s Brief at 13-14 (Dkt. 18).  This argument is misplaced.

Even if Petitioner's references to the record are accurate and a narrowing of the space where nerve roots exist represents evidence of nerve root compression (the Court takes no position on these issues), Plaintiff succeeds only in pointing to evidence that he meets *some* of Listing 1.04(A)'s elements, but not *all* of them as is required.  Indeed, as Respondent notes, the medical record does not reflect motor loss/weakness; just the opposite, actually, with findings

---

[1] Effective April 2, 2021, the criteria of Musculoskeletal Listings changed.  85 Fed. Reg. 78164-01.  These new rules apply to applications filed on or after the effective date and to claims that are pending on or after the effective date.  *Id.*  Petitioner's 2016 application and the 2019 hearing and ALJ decision were prior to these changes.

**REPORT AND RECOMMENDATION - 7**

suggestive of fully-intact upper and lower extremity strength. Respt.'s Brief at 4-5 (Dkt. 20) (citing AR 364, 371, 447, 464, 467, 470, 474, 529, 535, 588, 594, 609, 712, 715, 827, 968).[2] These realities likely explain why, at the May 22, 2019 hearing, Petitioner's then-attorney acknowledged matter-of-factly that Petitioner does not meet any listing, let alone Listing 1.04(A). AR 55 (Attorney Fluckiger stating: "I'm – *I recognize that [Petitioner] does not meet a listing specifically* or that there is an applicable GRID in his case. But, simply that he can't sustain full-time competitive work doing his prior work or any other work, [ ] because of the combination of exertional and non-exertional limitations that prevent him from doing that work.") (emphasis added). In turn, substantial evidence supports the ALJ's conclusion that Petitioner has "normal strength in both his upper and lower extremities" and that his impairments do not cause motor loss. AR 29, 31. Without the requisite motor loss, Petitioner's impairments cannot meet or medically equal Listing 1.04(A).

Reversal is not warranted on this issue.

2. <u>The ALJ Did Not Err in Questioning Petitioner's Symptom Testimony</u>

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other

---

[2] Respondent is also critical of Petitioner's claim that the ALJ should have found that he had an inability to ambulate effectively and a deficiency in fine motor movement because "neither of these is a requirement of Listing 1.04(A)." Respt.'s Brief at 5-6 (Dkt. 20). But in Petitioner's defense, these are justifications that the *ALJ* originally made at step three. AR 29. Even so, any error was harmless as Petitioner has not demonstrated that he meets all of Listing 1.04(A)'s remaining criteria.

**REPORT AND RECOMMENDATION - 8**

symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id*.

Generalized findings will not satisfy this standard. The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46). This requires that the ALJ "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. at 493 (quoting *Reddick*, 157 F.3d at 722). If there is such substantial evidence, courts will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Even when the evidence can support either outcome, a court may not substitute its judgement for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Here, Petitioner alleges an inability to perform work-related activity due to lower and middle back pain, neck pain, and a hearing impairment that limit his ability to stand, walk, sit, lift, or concentrate for extended periods of time. His September 21, 2016 and June 16, 2017 function reports confirm this, stating in relevant part:

- Extreme pain prevents me from standing, walking, or sitting in any position for more than 10 minutes at a time and prevents lifting of more than 10 pounds. Cannot focus or concentrate due to pain or with pain relievers. It requires more than six Percocet a day to get relief and then am unable to focus or remember.

- Wife primarily takes care of me. Cannot put on socks and shoes. Wife takes care of dressing. Wife brushes hair. Very painful to bathe but manage. Wife prepares all meals. Need consistent reminders from wife for personal hygiene.

- Cannot sleep for more than 30 minutes at a time. Up 3-6 times a night to ice back. Get up at least every two hours for heat or ice packs.

**REPORT AND RECOMMENDATION - 9**

- Pain is too severe to do house or yard work. Used to share duties but no longer able to stand. Standing for more than 10 minutes is painful.

- Cannot drive because reaching steering wheel aggravates pain in back and neck. Severe back pain limits my ability to drive and make routine decisions. Needs assistance from spouse to get in and out of car.

- Enjoyed playing sports, hunting, fishing, camping, and work but is no longer able due to pain. Eliminated all social activities due to pain. Went from very active to inactive.

- Short attention span and quick temper. Very irritable.

- Lift less than 10 pounds and walk/sit 5-10 minutes at a time. Squatting, bending, reaching, kneeling, and climbing stairs are non-existent.

- Limited long-term memory due to medication which also affects tasks, concentration, understanding, and following instructions.

- Back pain limits mobility.

- Only go outside to visit doctors because it's too painful.

- Cannot do any shopping.

AR 263-68, 290-96. Petitioner's testimony at the May 22, 2019 hearing largely parallels these claims. AR 67-68, 70-73, 78-84.

The ALJ found that, while Petitioner's impairments could reasonably be expected to cause the symptoms alleged, his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 30. As described below, the ALJ's justification in this regard amounts to clear and convincing reasons for questioning Petitioner's symptom testimony.

First, Petitioner's challenge to the ALJ's credibility determination relies on instances in the record where his impairments and related symptoms are verified, before reframing the issue as the ALJ's failure to recognize as much. Pet.'s Brief at 15 (Dkt. 18). However, the ALJ did not reject allegations that Petitioner suffers from certain impairments or that such impairments

**REPORT AND RECOMMENDATION - 10**

are painful and impact his ability to work. Indeed, the ALJ expressly concluded that Petitioner suffers from degenerative disc disease and that it is severe, insofar as it significantly limits his ability to perform basic work activities. AR 28-29. No, the relevant portion of the ALJ's decision on this issue is that the ALJ questioned the *extent* to which this recognized impairment and corresponding symptoms prevented Petitioner from working at all. Significantly, even in doing so, the ALJ specifically accounted for Petitioner's limitations during the fourth step of the sequential process (the RFC analysis). AR 29-33. Therefore, where Petitioner's arguments rely upon the existence of certain limiting impairments and symptoms, they are inapposite to the critical issue because the ALJ already acknowledged such limitations and incorporated them into Petitioner's RFC. The question remaining is not whether such symptoms/limitations exist (they absolutely do), but whether Petitioner is able to work even with such limitations.

Second, the ALJ stressed that Petitioner's alleged onset date coincided with the date he was let go from work due to cost-cutting measures – not because of a disability. AR 30, 32. In assessing a claimant's testimony, an ALJ may rely on the fact that the claimant stopped working due to a layoff and not because of any medical problems. *Williams v. Colvin*, 699 F. App'x 496 (9th Cir. 2015); *see also Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ did not err in discounting the claimant's credibility when he stopped work due to a layoff and the alleged disability onset date was the same date as the layoff). To this end, the ALJ further highlighted testimony that, while Petitioner was looking for full-time work in the year after being laid off (and, importantly, *after* his alleged onset date), his condition "remained about the same" as before. AR 30, 32 (citing AR 65). The ALJ properly relied upon these intertwined circumstances in questioning Petitioner's credibility. *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988) (affirming finding that the claimant's back problems were not disabling when they had remained constant for a number of years and had not prevented her from working).

**REPORT AND RECOMMENDATION - 11**

Third, the ALJ concluded that certain of Petitioner's daily activities are inconsistent with his above-referenced allegations of *totally*-disabling limitations.  AR 30-31.  The ALJ observed that, in addition to the above-referenced job searches, Petitioner is independent with personal care, runs errands, does the grocery shopping, is able to perform household chores, walks for exercise, and shares driving duties for the occasional 750-mile trip between residences in Idaho and Arizona.  *Id*. (citing AR 58-59, 361, 464, 687, 692, 695, 826, 854, 858, 1154, 1166, 1540, 1603).³  These activities indicate better overall functioning than Petitioner reports he is capable of and constitute valid reasons to reject the extent of his complaints.  *Ahearn v. Saul*, 988 F.3d 111, 1117 (9th Cir. 2021) (finding that claimant's "ability to play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time . . ., to use public transportation, to shop at stores, to perform personal care, to prepare meals, to socialize with friends, and to perform household chores" was inconsistent with allegations of disabling limitations); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

Fourth, the ALJ concluded that Petitioner's claims do not neatly align with the medical record.  AR 31-33.  Whereas Petitioner reports that his back pain is altogether debilitating, his medical records do not paint the picture of someone who is near to completely inactive due to constant and severe pain.  As the ALJ emphasized, physical examinations showed that he is in "no acute distress," with providers noting that "his presentation is inconsistent with his pain

---

³ The ALJ also indicated that Petitioner served as his wife's caregiver as she recovered from significant back surgery.  AR 31.  However, Petitioner actually testified that a family friend lived with them for six weeks to help care for his wife during this time.  AR 83-84.  Any error in this respect is harmless because the ALJ provided other clear and convincing reasons to discredit Petitioner's testimony.  *Batson*, 359 F.3d at 1197 (the ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld).

**REPORT AND RECOMMENDATION - 12**

complaints, and that while he has degenerative changes, there is no significant neural impingement at the level of his symptoms." AR 31 (citing AR 447, 460-61, 464, 467, 472, 715, 875-76, 886-87, 1158). Similarly, in the weeks preceding the hearing, the ALJ commented how Petitioner reported that he was generally healthy; had no change in strength or exercise tolerance; had no neck, muscle, or joint pain; had no range of motion limitation; and had no numbness or weakness. AR 31 (citing AR 1539-40). Petitioner even admitted to the discrepancy between his claimed symptomology and the medical record, testifying in response to the ALJ's questions as follows:

> Q: Okay. So yeah, because when I – when I read the results of the MRIs, which are helpful, and then the notes from the doctors, it didn't appear that your symptoms, you know, exactly correlate to the objective finding on the MRIs. Is that what they explained to you?
>
> A: Yeah, that's true. I mean, I'm in . . . so much pain, and there is no explanation.
>
> Q: Okay. And so they don't consider that your – the objective findings are something that would be – that they would even recommend surgery on. Is that correct?
>
> A: That's correct.

AR 72. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Together, the record contains clear and convincing explanations as to why the ALJ found Petitioner's testimony not entirely credible. While Petitioner has identified conflicting evidence that supports his position, it is not the Court's role to weigh such evidence, draw inferences, or resolve credibility. Rather, the Court's measuring stick is simply whether the ALJ supported his

**REPORT AND RECOMMENDATION - 13**

decision to doubt Petitioner's credibility and deny disability benefits with clear and convincing reasons. He did. Accordingly, as required by controlling law, the ALJ will not be second-guessed as to such conclusions on the record here against the justifications provided. *Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").

Reversal is not warranted on this issue.

3. <u>The ALJ Did Not Err in Assessing Petitioner's Ability to Perform Either His Past Relevant Work or Other Jobs That Exist in Significant Numbers in the National Economy at Step Five of the Sequential Process</u>

Petitioner takes issue with the ALJ's conclusion that he is capable of performing not only his past relevant work, but also other occupations that exist in significant numbers in the national economy. He claims, first, that his testimony and the medical record establish that he would miss more than two days of work per month and be off-task more than 15% of the time, rendering him ineligible for *any* work. Pet.'s Brief, at 17 (Dkt. 18). Second, he claims that, *if* he was limited only to sedentary work, the only job he would be eligible to perform would be his past employment as a consultant – and *that* job is neither sedentary nor represents qualified past relevant work (because he did not work in that position long enough). *Id*. at 17-19. These interrelated contentions, however, presume that his arguments up to this point are well-founded; in other words, they rise and fall with the Court's earlier discussion of these same issues. *See supra*. However, the Court has already concluded that the ALJ did not err in discrediting Petitioner's testimony based, in part, upon the medical record. This represents a critical shortcoming in Petitioner's instant argument.

Further, other than his own testimony and conclusory assertions, Petitioner points to no evidence establishing that he would be so affected. Suffice it to say, the ALJ properly concluded

**REPORT AND RECOMMENDATION - 14**

that Petitioner's RFC allows him to perform light work with certain limitations, including his past relevant work as a consultant, industrial organization manager, and production superintendent. AR 34. Ms. Statz, the vocational expert, confirmed as much, while identifying three additional occupations that exist in significant numbers in the national economy that coincide with Petitioner's RFC. AR 34-35.

Reversal is not warranted on this issue.

## IV. CONCLUSION

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549. The ALJ has provided reasonable and rational support for his well-formed conclusions, even if such evidence is susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence. Therefore, the Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision should be affirmed and Petitioner's Petition for Review should be denied.

## V. RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that the decision of the Commissioner be AFFIRMED, that Petitioner's Petition for Review (Dkt. 1) be DENIED, and this action be DISMISSED in its entirety, with prejudice.

**REPORT AND RECOMMENDATION - 15**

**Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), the briefing period to submit objections is shortened as follows: <u>Objections to this Report and Recommendation must be filed no later than Friday, February 25, 2022 and shall not exceed 20 pages; a response to any objections shall be filed no later than Monday, March 4, 2022 and shall not exceed 10 pages</u>.**

DATED: February 18, 2022

_____
Honorable Raymond E. Patricco
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16